453 A.2d 608

**COMMONWEALTH of Pennsylvania**

v.

**Walter PERRY, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 23, 1982.

Filed Nov. 30, 1982.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Alan Sacks, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, BROSKY and BECK, JJ.

SPAETH, Judge:

This is an appeal from a judgment of sentence for robbery, theft and criminal conspiracy. Appellant argues that the lower court erred in not admitting a photograph of his accomplice into evidence. We agree that this was error, but find that it was harmless, and therefore affirm.

The charges against appellant arose out of the robbery of a bar by two men on July 5, 1980. The only people in the bar at the time it was robbed were the manager, Cornelia "Charlie" Harris; the barmaid, Beatrice Johnson; and the porter. Both Harris and Johnson testified at trial, and their testimony, which was substantially the same, was as follows.

At about 5:00 p.m., two men entered the bar and sat at the end of the bar counter. N.T. 1/8/81, 110–113 (Johnson). Johnson and Harris both recognized one of the men—not appellant—as "Slick." *Id.* 113 (Johnson); *id.* 158 (Harris). The men got up from the bar, with appellant going to the men's room, and Slick asking Johnson for a glass of water. *Id.* 114 (Johnson). Johnson told Slick that she was not allowed to serve him because he had robbed the bar, *id.* 115, and that he should talk to the manager about it. Slick went to talk to Harris, and she told him that he would not be served because he had robbed the bar "a couple of weeks ago." *Id.* 159 (Harris). By this time appellant had come out of the men's room. When he walked up to Harris and Slick, Harris remarked to appellant, "Gee, you're short." *Id.* 115 (Johnson); *id.* 160 (Harris). Harris was about a foot away from appellant when she said this to him, *id.* 161, and they were almost face to face, *id.* Johnson testified that appellant was "five one, five two" and "a little taller than Charlie [Ms. Harris] was." *Id.* 120. Harris, who is four feet eleven and one-half inches and was wearing heels that day, *id.* 161 (Harris), testified that Slick was "a little bit taller than" appellant, *id.* 169. The two men turned to leave the bar, but suddenly they turned back, and Slick had a gun in his hand. Slick told Johnson to get the cash from the cash register and appellant to get the change from the bar counter. *Id.*

116–118 (Johnson); *id.* 162 (Harris). The two men took the money and left the bar.

The women called the police, and when Officer Smith arrived, they gave him a description of the two men. Johnson testified that she told the officer that appellant had a mustache, a bush haircut, was about twenty-two or twenty-three, and wore a white T-shirt, khaki pants and sneakers. *Id.* 121–122. Harris testified that she told the officer that appellant was about 133 lbs., short, had a mustache, and wore a white T-shirt and long dark pants. *Id.* 167–68. Officer Smith testified that the women told him that both men were "five one and 130," *id.* 182, and he included this information in his holdup memorandum, which was admitted into evidence.

About two weeks later, appellant came into the bar, stayed a few minutes, and left. Johnson recognized him, and called the police. When appellant was apprehended, the same day, she identified him from a group of men. *Id.* 123–124. Both Johnson and Harris were positive in identifying appellant, and had no doubt that he was one of the men who robbed the bar. *Id.* 123–24 (Johnson); *id.* 170 (Harris).

Appellant and Slick, or Charles Satchel, were tried separately. At appellant's trial, defense counsel attempted to introduce into evidence the arrest photograph of Satchel, after he had successfully introduced the arrest photograph of appellant, which it was stipulated was authentic. Defense counsel argued that the photograph of Satchel "was relevant and proper and probative because the people have been described and it goes to their ability to observe, their ability to observe under stress what Mr. Satchel looks like." *Id.* 221–222. Defense counsel sought to show, from the information typed in at the bottom of the photograph, that Satchel was five feet nine inches, and 128 lbs.[1] The lower court, however, refused to admit the photograph into evidence, ruling that it was irrelevant. *Id.* 224–225.

1. The photograph has been made a part of the record for our review.

Appellant assigns this ruling as error, arguing that the photograph was relevant because "[d]iscrepancies between the description of the perpetrators given to the police and the perpetrators actual appearance is important evidence for the jury to hear in order to evaluate properly the basis for the identification witnesses' testimony on an essential element of the Commonwealth's case." Brief for Appellant at 6. We agree.

■ Questions concerned with the admission or exclusion of evidence are within the discretion of the trial court, and the court's ruling will be reversed only for an abuse of discretion. *Lewis v. Mellor,* 259 Pa.Superior Ct. 509, 393 A.2d 941 (1978). Evidence is relevant when it tends to establish facts in issue. *Whistler Sportswear, Inc. v. Rullo,* 289 Pa.Superior Ct. 230, 433 A.2d 40 (1981). But not all relevant evidence is admissible, and the trial court may exercise its discretion to exclude evidence that, though relevant, may confuse, mislead, or prejudice the jury. *Lewis v. Mellor, supra.* Thus, the issue here is whether the photograph of Satchel tended to establish a fact in issue, for it is difficult to suppose, and the Commonwealth does not argue, that the photograph could have confused, misled, or prejudiced the jury.

■ We believe that the photograph was relevant. The robbery was committed by two men of disparate heights—appellant was five feet one inch and Satchel was five feet nine inches. This difference, though not extreme, must have been noticeable. Yet, according to the descriptions that Johnson and Harris gave Officer Smith, the men were the same height—about five feet one inch. The fact that Satchel was in fact five feet nine inches, as shown by the information on the photograph, tended to establish that Harris's and Johnson's descriptions of him were incorrect, and that in turn tended to establish that their descriptions of appellant were also incorrect, and to call into question their ability to observe the robbers and perceive the situation at the time of the robbery. As Professor Wigmore has observed:

## (f) *Opportunity of observing the events*

A necessary qualification in a witness is personal knowledge, i.e., an opportunity, as to place, time, proximity, and the like, to observe the event or act in question (§ 650 *supra*), and the deficiency of such opportunity may be shown to discredit (§ 994 *supra*). Hence, all facts which bear upon the position, distance, and surroundings, the bystanders and their conduct, the time and the place, the things attracting his attention, and similar circumstances, said by the witness to have been observed by him at the time of observing the main event testified to by him, are material to his credit in so far as they purport to have formed a part of the whole scene to his observation; thus, if an error is demonstrated in one of the parts observed, the inference (more or less strong) is that his observation was erroneous (or his narration manufactured) on other and more important parts also.

This source of discredit is of vast importance in the overthrow of false or careless testimony; and its permission must be provided for in any definition of the term "collateral":

3A Wigmore, Evidence § 1005(f) (Chadbourn rev. 1970) (footnote omitted).

The lower court's ruling that the photograph was inadmissible as irrelevant was therefore error.[2]

2. In our discussion we have assumed that the photograph would have been properly authenticated, either by stipulation, as was done with appellant's arrest photograph, or by other means. It is clear from the on-the-record dialogue between the district attorney, defense counsel and the trial judge that the threshold objection to the photograph was its relevance, and that the question of its authenticity was not reached once it was ruled irrelevant. N.T. 1/8/81, 219–225. Thus, the district attorney argued: "If Your Honor rules that the photo can come in, I am going to ask him to bring the photograph in. I do not believe the photo should be allowed in, period. I think it is irrelevant to the trial of the co-defendant." *Id.* 224–225. On appeal, however, the Commonwealth does not argue that the photograph was irrelevant, but instead, that the information on the photograph was hearsay, and that the photograph was not properly authenticated. Since these arguments were not addressed to the lower court, and therefore did not call for a response either by defense counsel or the court, we do not consider them.

■ We have concluded, however, that the error was harmless, for we are certain beyond a reasonable doubt that the photograph would not have affected or contributed to the jury's verdict. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

During direct examination, Johnson was asked about her description of appellant, N.T. 1/8/81, 120–121, including his clothes, *id.* 122, and about how she recognized him when he came into the bar two weeks after the robbery, *id.* 123–124. She was also asked on direct how long she had observed appellant during the robbery, from what distance, *id.* 126, and under what lighting conditions, *id.* 127–128. On cross-examination, she was questioned at length about whether she had ever before seen either Satchel or appellant, *id.* 131–133, and how much attention she had paid to appellant when he was in the bar, *id.* 137. Defense counsel made frequent reference to appellant's height in relation to Satchel's, *id.* 137 ("short guy"); 139 ("short fellow"); 140 ("short fellow"). Furthermore, counsel elicited from Johnson an acknowledgment that Satchel was "taller," "about five four," than "this short guy" [appellant]. *Id.* 148. Counsel thus asked Johnson about the description she had given Officer Smith, as reported in his holdup memo, *id.* 149. Harris was also asked on cross-examination about her description of appellant's hair, *id.* 172, mustache, hat and clothes, *id.* 173, and Officer Smith about his holdup memorandum, *id.* 179, including the witnesses' description of appellant's and Satchel's clothes, mustache and height, *id.* 182–84, 186.

Moreover, the central point of defense counsel's closing argument was an attack on the reliability of the witnesses' descriptions of the two robbers, N.T. 1/9/82, 297–319, to which the assistant district attorney responded by emphasizing how reliable Johnson's and Harris's identifications of appellant were *id.* 318–330. The lower court also charged the jury with respect to the identification issue. *Id.* 342, 350–351.

We have already discussed, quoting Professor Wigmore, why the photograph of Satchel may not be described as "collateral," for if Johnson's and Harris's identifications of Satchel were incorrect, their identifications of appellant might also be incorrect. Nevertheless, the relevance of the photograph was tangential rather than direct; it tended to contradict the two women's descriptions only with respect to Satchel's height.[3] In their descriptions of appellant, both women were consistent; both had an ample opportunity to observe appellant; and both remained positive and unwavering in their identifications of appellant.

Finally, even without the photograph of Satchel in evidence, by his questioning and closing argument defense counsel emphasized the discrepancy arising from the fact that appellant and Satchel were of different heights but the two women had described them to Officer Smith as of the same height. The issue of appellant's identification was therefore fully presented to the jury, with proper instructions by the court.

Given these several aspects of the case—the completeness of the witnesses' testimony; the closing arguments and charge; and the tangential relevance of the photograph—we hold that the lower court's error in excluding the photograph was harmless.

Affirmed.

3. Appellant argues that Officer Smith testified that the two women described Satchel as weighing 130 pounds, N.T. 182, 186, "whereas he ... in fact ... weighed one hundred twenty pounds." Brief for Appellant at 10 n. The information on the photograph is that Satchel weighed 128 pounds.