595 A.2d 600

COMMONWEALTH of Pennsylvania

v.

Jason L. ENDERS, Appellant.

COMMONWEALTH of Pennsylvania

v.

Scott Francis LIPTAK, Appellant.

COMMONWEALTH of Pennsylvania

v.

Alexander O. STEINBERG, Appellant.

COMMONWEALTH of Pennsylvania

v.

Daniel NELSON, Appellant.

Superior Court of Pennsylvania.

Argued April 18, 1991.

Filed July 30, 1991.

John P. Lawler, Stroudsburg, for appellant (at 1882).

Robin A. Spishock, Stroudsburg, for appellant (at 2030).

Nancy Aaroe, Stroudsburg, for appellant (at 2123).

William K. Sayer, Asst. Public Defender, Stroudsburg, for appellant (at 2199).

Gregory Doyle, Asst. Dist. Atty., Stroudsburg, for the Com., appellee (at 1882, 2030, 2123 and 2199).

Before MONTEMURO, BECK and TAMILIA, JJ.

MONTEMURO, Judge:

These unconsolidated appeals arise from the judgments of sentence entered after a jury trial at which all appellants, Jason L. Enders, Scott Francis Liptak, Alexander O. Steinberg and Daniel Nelson, were convicted of false imprison-

ment.[1] The charges stemmed from appellants' participation in a satanic cult ritual. After all appellants' post-verdict motions were denied, sentences were imposed.[2] It is from these sentences that the instant appeals are taken.

Appellants, collectively and individually, raise four (4) issues for our consideration. Generally, it is alleged that: 1) the verdicts were based upon insufficient evidence and were against the weight of the evidence; and, 2) the trial court erred in (a) admitting into evidence items seized from all appellants' homes; (b) limiting the examination of co-defendants' witnesses; and, (c) failing to give a cautionary instruction at the introduction of co-defendant Nelson's inculpatory statement. After a thorough review of the record and applicable case law, we find all of appellants' allegations without merit.

The facts as established at trial, and set forth by the trial court in its opinion adjudicating appellants' post-verdict motions, are as follows:

On Friday, July 21, 1989, the victim, Charles Collier received a phone call from Jason Enders who requested that Collier come over to Enders' home. When Collier arrived at Enders' home, he spoke briefly with Enders who left the porch and entered his home. A short time later Enders returned to the porch and told Collier that some people were coming over. Thereafter, a vehicle arrived at the Enders' residence with Jason Male, Scott Liptak, Daniel Nelson and Alex Steinberg. At some point the subject of a "cult" was brought up. Collier said he wanted nothing to do with it. *He was forcibly taken to an abandoned barn down the road from the Enders' home and held against his will. He was tied to stakes*

---

**1.** Appellants Enders, Liptak and Nelson received verdicts of not guilty as to charges of kidnapping, conspiracy and simple assault. Appellant Steinberg was found not guilty of kidnapping and conspiracy; however, he was convicted of simple assault.

**2.** Appellants Enders and Steinberg were each sentenced to eleven and one-half (11½) to twenty-three (23) months imprisonment. Appellants Liptak and Nelson were each sentenced to six (6) to twelve (12) months imprisonment.

*in the ground in spread eagle fashion over a penta-
gram drawn in the dirt. He had a leather collar with
nails placed about his neck. Collier specifically testi-
fied that each of the defendants was involved in tying
him down.* A satanic or occult ritual was performed
over him. Before the ritual ended, *Defendant Steinberg
punctured Collier's neck by pressing on the nails and
placed his fingers in Collier's blood and then to his
lips.* Subsequently, the victim was released after being
threatened by Steinberg that, if he told anyone what
happened, they would kill him.

On Monday evening Collier told his grandmother about
the ritual and identified the Defendants as the perpetra-
tors. On Tuesday, the police came to interview Collier at
his grandmother's home. While the police were present,
Defendant Nelson arrived and was identified by Collier.
The police arrested Nelson who subsequently gave two
detailed statements to police. Both statements implicated
all Defendants in the ritual. On Tuesday, July 25, 1989,
Collier sought medical attention for the wounds to his
neck. Dr. Gilkey, the treating physician, testified that
the wounds were consistent with puncture wounds.

*See* Opinion of Trial Court, pp. 3–5 (emphasis added).

 Appellants Enders, Liptak and Nelson each chal-
lenge the sufficiency of the evidence.[3] In reviewing this
claim, we begin with the well-known standard which re-
quires that we ask:

**3.** Appellant Steinberg has waived this issue. It is well established that
only those issues included in written post-verdict motions will be
considered preserved for appellate review. *Commonwealth v. Goins,*
348 Pa.Super. 22, 501 A.2d 279 (1985); Pa.R.Crim.P. 1123. Boilerplate
motions, that "evidence was insufficient to support the verdict" and
"the verdict was against the weight of the evidence", will preserve no
issue for appellate review unless the motion goes on to specify in what
respect the evidence was insufficient, or why the verdict was against
the weight of the evidence. *Commonwealth v. Holmes,* 315 Pa.Super.
256, 461 A.2d 1268 (1983), *citing* Pa.R.Crim.P., Rule 1123, 42 Pa.C.S.A.
As appellant Steinberg failed to specify in his post-verdict motions
why the verdict is against the weight of the evidence or in what
respect the evidence is insufficient, he has waived these issues on
appeal. Further, even were we to have examined this claim, the result
would offer him no relief. See discussion, *supra.*

... whether, accepting as true all of the Commonwealth's evidence and all reasonable inferences arising therefrom upon which, if believed, the fact-finder could reasonably have based its verdict, such evidence and inferences are sufficient in law to establish the elements of the crime in question beyond a reasonable doubt.

*Commonwealth v. Nelson*, 514 Pa. 262, 270, 523 A.2d 728, 733 (1987), *cert. den.* 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (citation omitted).

The elements of the crime in this instance are defined by the Crimes Code, which states that a person will be guilty of *false imprisonment*

... if he knowingly restrains another unlawfully so as to interfere substantially with his liberty.

18 Pa.C.S.A. § 2903. After a thorough review of the notes of testimony, and construing the evidence in the light most favorable to the Commonwealth, we agree with the trial court that the Commonwealth presented evidence sufficient to convict appellants, Enders, Liptak and Nelson, of false imprisonment. Further, appellants' attempt to assert that the evidence is insufficient as it lacks "some minimal standard of credibility" fails as it is within the jury's sole province, as fact-finder, to judge the credibility and veracity of a witness. *See Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988) (The question of a witness' credibility is reserved exclusively for the jury.) As the jury chose to believe the victim over the testimony of appellants' alibi witnesses, appellants' first issue lacks merit.[4]

4. Appellants Enders, Liptak and Nelson also appear to be arguing that the verdict is against the weight of the evidence due to the alleged unreliable and contradictory nature of the evidence. We note that the ability of appellate courts in this Commonwealth to review a verdict to determine if it is against the weight of the evidence has been questioned by our Supreme Court. *See Commonwealth v. Nelson*, 514 Pa. 262, 273 n. 3, 523 A.2d 728, 733 n. 3 (1987). And, although we are still permitted to review such an allegation to determine whether the verdict "shocks one's sense of justice", we do not find, from a reading of the cold record, that the verdict in this instance meets that standard. *See Commonwealth v. Torres*, 396 Pa.Super. 499, 578 A.2d 1323 (1990). Therefore, any attempt by appellants to question the weight of the evidence fails.

■ It is next argued, by all appellants, that the trial court erred in admitting into evidence certain photographs of all appellants' bedrooms, their class pictures, and various items seized from their homes, including skulls and books concerning the occult. It is well-settled law that

> [t]he trial court has 'broad discretion as to the manner in which a trial is to be conducted, particularly with regard to the admission or exclusion of evidence.' Commonwealth v. Lumpkins, 324 Pa.Super. 8, 14, 471 A.2d 96, 99 (1984). Relevancy is, ..., a basic requirement for the admissibility of any evidence in a criminal trial. Id.

Commonwealth v. Conway, 368 Pa.Super. 488, 493–95, 534 A.2d 541, 544 (1987), alloc. den. in 520 Pa. 581, 549 A.2d 914 (emphasis added).

> Evidence is relevant when "the inference sought to be raised by the evidence bears upon a matter in issue in the case and, second, whether the evidence 'renders the desired inference more probable than it would be without the evidence[.]' "

Commonwealth v. Haight, 514 Pa. 438, 440, 525 A.2d 1199, 1200 (1987), citing Commonwealth v. Stewart, 461 Pa. 274, 278, 336 A.2d 282, 284 (1975) (citations omitted in original).

> However, not all relevant evidence is admissible, and a trial court may exercise its discretion to exclude relevant evidence that 'may confuse, mislead or prejudice the jury,' Id. 324 Pa.Super. at 15, 471 A.2d at 100. (citations omitted). Of course, most of the evidence offered by the prosecution in a criminal case will prejudice the defendant. Commonwealth v. Dollman, 355 Pa.Super. 108, 114, 512 A.2d 1234, 1237 (1986) (citations omitted). The inquiry therefore is whether the evidence is so prejudicial that it 'may inflame' the jury to make a decision based upon 'something other than the legal propositions relevant to the case.' Commonwealth v. Shain, 324 Pa.Super. 456, 464, 471 A.2d 1246, 1249 (1984); (citation omitted). A piece of evidence is of essential evidentiary value if the need for it clearly outweighs the likelihood of it inflaming the minds and passions of the jurors.

(citation omitted). Because rulings on the admission of evidence rest within the sound discretion of the trial court, we will not reverse the trial court's decision absent a manifest abuse of discretion. *Commonwealth v. Lumpkins, supra* 324 Pa.Super. at 15, 471 A.2d at 100." *Commonwealth v. Conway, supra.*

In determining whether the trial court abused its discretion in this instance, we note that appellants were brought to trial on charges of kidnapping, conspiracy, false imprisonment and simple assault. The basis of the charged criminal activities stemmed from ritualistic acts performed upon the victim after he had been forceably abducted and confined against his will. The Commonwealth, therefore, sought to prove that the actions of all four (4) defendants were commensurate with a belief in satanism which resulted in the intentional restraint and assault of the victim. Appellants' defenses were that they were not at the barn on the evening in question, and that they were not involved in satanism. Obviously then, the Commonwealth's introduction, and the trial court's admission, of the evidence tends to establish a fact in issue—whether appellants believed in and were involved in satanism at the time of the incident, and whether appellants acted consistently with their beliefs and practices. Therefore, the evidence is relevant and probative.

In weighing the inflammatory nature of the evidence [5] against its probative value, the trial court found the evidence more probative than prejudicial. We do not find this to be an erroneous determination. As stated in *Commonwealth v. Clark*, 280 Pa.Super. 1, 421 A.2d 374 (1980), "[i]n determining whether the evidence is so remote that the prejudicial effect outweighs the probative value, the court has no fixed standard on which to rely, but must instead consider the nature of the crime, the evidence being offered, and all attendant circumstances." *Id.*, 280 Pa.Superior Ct.

---

5. As stated in *Commonwealth v. Costal*, 351 Pa.Super. 200, 505 A.2d 337 (1986), "[e]vidence of appellant's affiliation with satanism is prejudicial." *Id.*, 351 Pa.Superior Ct. at 203, 505 A.2d at 338.

at 7, 421 A.2d at 376, *citing Commonwealth v. Kinnard*, 230 Pa.Super. 134, 326 A.2d 541 (1974). As the evidence offered tends to confirm the knowledge and intent of appellants in furtherance of the alleged criminal activity, the trial court was correct in admitting the evidence in this case.[6] As such is the case, appellants' contentions fail.

Appellants Enders, Liptak and Nelson next challenge the trial court's decision to limit examination of their witnesses.[7] During the presentation of the defense, the trial judge ruled that direct examination of a witness would be permitted by the defense counsel who called the witness. Thereafter, all other co-defendants would be permitted cross-examination. Then the Commonwealth would be permitted cross-examination, and redirect would be permitted *only* as to the defendant who called the witness.[8] Appellants seek to assert that the trial court abused its discretion in limiting examination of the witnesses as appellants were effectively denied redirect.

6. It is also noted that the jury was not compelled to believe that appellants participated in the occult as ample testimony was elicited at trial to show that the evidence admitted was merely representative of rock groups, a friendship club and research material. *See* N.T., Volume III, pp. 711–720; Volume IV, pp. 838–39, 842–851, 902–907. Further, with regard to appellant Nelson, the jury was made fully aware that he was mentally slow and easily influenced by others, which appellant Nelson sought to use to negate his intent and culpability. *See* N.T., Volume III, p. 584. Therefore, the jury was not swept "beyond a rational consideration of the guilt or innocence of the crime on trial." *Commonwealth v. Costal, supra, citing Commonwealth v. Ulatoski,* 472 Pa. 53, 63, 371 A.2d 186, 191 n. 11 (citation omitted).

7. Appellant Steinberg has waived this issue as he failed to properly preserve it in his post-verdict motions. *See* Footnote 3, *supra.*

8. The reasons provided for this determination were explained by the trial court, as follows:
 THE COURT: ... It's the Court's role to organize the procedure in a manner which will be somewhat probative and helpful to the jury. The efforts of counsel to ask every question they can conceive of without relevance or probative value will not be permitted. Obviously, any of you, when you call witnesses on your case, can recall witnesses to ask questions probative of matters you feel not adequately covered.
 N.T., Volume III, p. 616–17.

Initially, it is clear that "[t]he scope of redirect examination is largely within the discretion of the trial court." *Commonwealth v. Dreibelbis*, 493 Pa. 466, 479, 426 A.2d 1111, 1117 (1981), *citing Commonwealth v. Stokes*, 475 Pa. 312, 380 A.2d 370 (1977). In reviewing the procedures conducted for the examination of defense witnesses in this lengthy and convoluted trial, each appellant was given a full and fair opportunity to cross-examine any defense witness presented by a co-defendant. Further, appellants had the right to recall these same witnesses during the presentation of their own defenses, which in effect granted them redirect on any issue brought forth by the Commonwealth on cross-examination which was not covered on redirect by counsel who called the witness. As noted in *Commonwealth v. Kauffman*, 155 Pa.Super. 347, 38 A.2d 425 (1944), "[i]t is the function of redirect examination to explain, enlarge upon, or qualify new matter brought out by cross-examination, so that the jury will not receive distorted impression of facts from such testimony." *Id.*, 155 Pa.Superior Ct. at 353, 38 A.2d at 428. *See also Commonwealth v. Sampson*, 454 Pa. 215, 311 A.2d 624 (1973). This appellants were permitted to do during the presentation of their defenses.[9] Finally, in light of the number of defendants and witnesses in this trial and the volume of testimony presented for the jury's consideration, the trial court was correct in limiting lengthy and convoluted examinations of witnesses, so as to preserve orderly presentation of evidence to the jury. As the trial judge did not abuse his discretion, appellants' allegations are without merit.

■ The final assertion, raised by appellants Liptak and Steinberg, is that the trial court erred in failing to give

9. It is also noted that all testimony presented by defendants in this case was consistent in that all sought to prove that they were not present at the scene, and that they did not believe in or practice satanism. Therefore, any given defense counsel's redirect of a witness was for the benefit of all, and covered any potential harm brought forth on cross-examination by the Commonwealth. Further, appellants did not recall any witness, as permitted by the court, which leads to the conclusion that appellants had no need for redirect examination. Appellants' assertions of harm are accordingly without merit.

cautionary instructions at the time of the introduction of co-defendant, Daniel Nelson's, inculpatory statement, which implicated all defendants. As stated in *Commonwealth v. Covil,* 474 Pa. 375, 378 A.2d 841 (1977), "[a] limiting instruction may be given either as the evidence is admitted *or* as part of the general charge." *Id.,* 474 Pa. at 383, 378 A.2d at 845. Further, "[i]t is intended that the trial judge determine on a case by case basis whether instructions before the taking of evidence or at anytime during trial are appropriate or necessary to assist the jury in hearing the case." Pa.R.Crim.P., Rule 1119. And, although our Supreme Court, in *Covil,* emphasized that it is better to give a limiting instruction at the time evidence is admitted, this is not a strict rule. After reviewing the trial court's reasoning in postponing the limiting instruction, the Supreme Court in *Covil* concluded that "... the danger that the jury would misuse the evidence ... was relatively minor, thus reducing the necessity that a limiting instruction be given immediately." *Covil, supra,* 474 Pa. at 384, 378 A.2d at 846 (footnote omitted).

From a review of the trial transcript in this case, it is not unreasonable to conclude that the danger that the jury would misuse co-defendant Nelson's inculpatory statement is minor. The trial court, based on a request of defense counsel during the testimony of the victim, gave a general cautionary instruction to the jury stating that,

> I will indicate to the jury that we are dealing with five defendants in this case. There will be various evidence which will occur, I assume, in this case, which involves only one defendant. *You are to keep in mind that that evidence is only with regard to that defendant, and it's up to the Commonwealth to try to establish some connection between the evidence against one defendant and the charges against all the defendants ...*

N.T., Volume I, p. 22. When later requested to give the same cautionary instruction during the introduction of the statement of co-defendant Nelson, the trial court indicated to the jury that due to the fact that so much evidence would

be introduced which would necessitate the instruction, the trial judge would give the instruction in great detail as part of the Charge of the Court. *See* N.T., Volume II, pp. 296–97. This determination was reasonable in light of the number of defendants involved and the many witnesses called by all parties. Further, we find no abuse of discretion in light of two instructions by the trial court at the close of all evidence:

> "The statements of confession made by defendant Daniel Nelson after the alleged commission of the crimes charged cannot be considered by you as substantive proof of the guilt or innocence of the other defendants in this matter, but can only be used as evidence of guilt or innocence of the defendant Daniel Nelson, himself."

N.T., Volume IV, p. 1063. And,

> "Although the defendants in this case are being tried together, you must give separate consideration to each defendant. In so doing, you must determine what the evidence in the case shows with respect to each defendant, leaving out of consideration any evidence submitted solely against one of the other defendants. Specifically, any physical evidence found in the homes of co-defendants and entered as evidence should be considered solely against those defendants, and not against other defendants ..." [10]

N.T., Volume IV, pp. 1069–70. As it is within the trial judge's discretion to determine when to give limiting instructions, and as the instructions given encompass the concerns raised by appellants, there was no danger that the jury would misuse the evidence. Therefore, the final allegation of appellants Liptak and Steinberg is without merit.

Based upon the foregoing analysis, all judgments of sentence are affirmed.

Affirmed.

---

**10.** To the extent that appellants seek to challenge these instructions, they have waived any right of review as they failed to object or take any exceptions at the time of trial. *See Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).